1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   DANNY RAY ELDHARDT,

8                    Plaintiff,            No. 2:15-CV-3207-TOR

9        v.                                ORDER GRANTING DEFENDANT'S
                                           MOTION FOR SUMMARY
10  COMMISSIONER OF SOCIAL                 JUDGMENT
    SECURITY,

11

12                   Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14  judgment (ECF Nos. 16; 21).  This matter was submitted for consideration without

15  oral argument.  The Court has reviewed the administrative record and the parties'

16  completed briefing, and is fully informed.  For the reasons discussed below, the

17  Court **GRANTS** Defendant's motion and denies Plaintiff's motion.

18                          **JURISDICTION**

19        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

20

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying his supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following four issues for this Court's review:

(1)  Whether the ALJ improperly rejected the medical opinion evidence.

(2)  Whether the ALJ improperly rejected Plaintiff's subjective complaints.

(3)  Whether the ALJ improperly assessed Plaintiff's RFC.

ECF No. 16 at 2.  The Court evaluates each issue in turn.

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited:  the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted).  This requires "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which the ALJ did not rely.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity. *Id.* § 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of the enumerated impairments the Commissioner must find the claimant disabled and award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). *Id.* § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work

1    experience.  *Id.*  If the claimant is capable of adjusting to other work, the

2    Commissioner must find that the claimant is not disabled.  *Id.* § 416.920(g)(1).  If

3    the claimant is not capable of adjusting to other work, the analysis concludes with

4    a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

5         The burden of proof is on claimant at steps one through four above.  *Bray v.*

6    *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).  If the analysis

7    proceeds to step five, the burden shifts to the Commissioner to establish that (1) the

8    claimant is capable of performing other work; and (2) such work "exists in

9    significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

10   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

11                    **ADMINISTRATIVE PROCEEDINGS**

12        On February 2, 2009, Danny Ray Eldhardt filed a claim for Supplemental

13   Security Income (SSI) under Title XVI, alleging disability beginning on April 22,

14   2007.  ECF Nos. 13-3 at 2-3; 13-5 at 2-5.  Mr. Eldhardt's application was denied

15   initially and upon reconsideration.  ECF No. 13-3 at 4-5.  He thereafter filed a

16   written request for hearing.  ECF No. 13-4 at 23-25.  A hearing was held before an

17   Administrative Law Judge (ALJ) on April 21, 2011.  ECF No. 13-2 at 46.  In a

18   decision filed on June 15, 2011, the ALJ denied Mr. Eldhardt's SSI application.

19   ECF No. 13-3 at 6-17.

20

The Appeals Council thereafter granted Mr. Eldhardt's request for review. ECF Nos. 13-3 at 25-26; 13-4 at 85-87.  In an order filed on September 6, 2012, the Appeals Council vacated the ALJ's hearing decision and remanded for consideration of the medical opinion of treating source Paul Schmitt, M.D., to obtain updated medical records, to further consider Mr. Eldhardt's residual functional capacity (RFC), and to obtain vocational evidence if warranted.  ECF No. 13-3 at 25-26.

The ALJ held an additional hearing on April 16, 2014.  ECF No. 13-2 at 83-113.  On April 24, 2014, the ALJ rendered a decision denying Plaintiff's claim. ECF No. 13-2 at 83.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 2, 2009, the application date.  ECF No. 13-2 at 23.  At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of multiple joints, status post bilateral hip replacement and bilateral knee arthroscopies, thoracic outlet syndrome, and coronary artery disease, status post myocardial infarction and two stent placements (20 CFR 416.920(c)).  ECF No. 13-2 at 24.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  ECF No. 13-2 at 26.  The ALJ then concluded that Plaintiff had the RFC:

> [T]o perform less than the full range of sedentary work as defined in 20 CFR 416.967(a).  The claimant can lift no more than 10 pounds at a time.  The

claimant can occasionally lift and carry articles such as docket files, ledgers, and small tools. He can stand and/or walk two hours in an eight-hour workday and sit six hours in an eight-hour workday. The claimant can occasionally push and pull within the lifting restrictions described herein with the left upper extremity. The claimant is ambidextrous. The claimant can occasionally reach overhead with the left upper extremity. He can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. He should avoid concentrated exposure to unprotected heights and the use of moving machinery. Additionally, the claimant should not work around children.

ECF No. 13-2 at 26. At step four, the ALJ found Plaintiff is not capable of performing past relevant work. ECF No. 13-2 at 34-35. The ALJ proceeded to step five and found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform. ECF No. 13-2 at 35. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. ECF No. 13-2 at 36.

Mr. Eldhardt thereafter filed a request for review with the Appeals Council, which was denied. ECF No. 13-2 at 2-7. The ALJ's decision became the final decision of the Commissioner. ECF No. 13-2 at 2; 20 C.F.R. §§ 404.981, 422.201.

## DISCUSSION

### A. Opinions of Dr. Volkmann and Dr. Schmitt

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray*, 554 F.3d at 1228 (citation omitted); *Orn*, 495

F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.") (citing 20 C.F.R. § 404.1527)). "[I]f a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)) (brackets omitted). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

However, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation, internal brackets, and citation omitted). Moreover, "[i]f there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)). Despite this, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 631).

1    If a treating physician's opinion is not given "controlling weight" because it

2 is not "well-supported" or because it is inconsistent with other substantial evidence

3 in the record, the Administration considers specified factors in determining the

4 weight it will be given as set out in 20 C.F.R. § 404.1527(c)(2)-(6).  *Orn*, 495 F.3d

5 at 631.  "These factors include the 'length of the treatment relationship and the

6 frequency of examination' by the treating physicians, the 'nature and extent of the

7 treatment relationship' between the patient and the treating physician, the

8 'supportability' of the physician's opinion with medical evidence and the

9 consistency of the physician's opinion with the record as a whole."  Ghanim, 763

10 F.3d at 1161 (brackets omitted).

11    Additional factors relevant to evaluating any medical opinion, not limited to
       the opinion of the treating physician, include the amount of relevant
12    evidence that supports the opinion and the quality of the explanation
       provided; the consistency of the medical opinion with the record as a whole;
13    the specialty of the physician providing the opinion; and "[o]ther factors"
       such as the degree of understanding a physician has of the Administration's
14    "disability programs and their evidentiary requirements" and the degree of
       his or her familiarity with other information in the case record.

15

16 *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

17    An ALJ may only reject a treating physician's contradicted opinions by

18 "providing specific and legitimate reasons that are supported by *substantial*

19 *evidence*."  *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–31

20 (9th Cir. 1995)) (emphasis own).  "This is so because, even when contradicted, a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

treating or examining physician's opinion is still owed deference and will often be

'entitled to the greatest weight . . . even if it does not meet the test for controlling

weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Orn,* 495

F.3d at 633).

The phrase "supported by substantial evidences" means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison

Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "An ALJ can satisfy the 'substantial

evidence' requirement by 'setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and making

findings.'" *Garrison,* 759 F.3d at 1012) (quoting *Reddick v. Chater*, 157 F.3d 715,

725 (9th Cir. 1998)).

### 1.  Dr. Volkmann

Dr. Volkmann is an orthopedic surgeon and has treated Plaintiff for many

years.  ECF No. 16 at 7.  Based upon MRI results indicating "advanced

degenerative changes," Dr. Volkmann performed bilateral total hip replacements in

March and December 2007.  ECF No. 16 at 7.  In late 2007, Dr. Volkmann

completed physical evaluations of Mr. Eldhardt and concluded Mr. Eldhardt was

limited to performing sedentary work.  ECF Nos. 16 at 8; 13-8 at 138, 144.

1    According to Dr. Volkmann's treatment records dated April 8, 2008, Mr.

2    Eldhardt's hips were "doing fine," but Mr. Eldhardt came in complaining that "his

3    knees hurt.  They pop, they catch, they lock up, they give away."  EDCF No. 13-7

4    at 238.  Subsequently, Dr. Volkmann performed bilateral knee arthroscopies and

5    synovectomies in April 2008 and January 2009.  ECF Nos. 16 at 8; 12-7 at 240,

6    247.

7    On January 29, 2009, at Mr. Eldhardt's one-week check-up for his second

8    knee surgery, Dr. Volkmann commented that "Danny is actually doing quite well.

9    His knee has just minimal swelling, almost no effusion.  He is walking without

10   support . . . He can resume activity as tolerated.  His shoulder pain was also

11   suggested by Dr. Dickson to be arising from thoracic outlet syndrome . . . ."  ECF

12   No. 13-7 at 248.  On that same day, Dr. Volkmann completed another physical

13   evaluation of Mr. Eldhardt.  ECF Nos. 16 at 8; 13-7 at 233-35.  On the evaluation,

14   Dr. Volkmann noted Mr. Eldhardt's dual hip and knee surgeries and indicated that

15   Mr. Eldhardt had Rheumatoid Arthritis that "severely" affected Mr. Eldhardt's

16   ability to perform: (a) sitting, (b) standing, (c) walking, (d) lifting, (e) handling,

17   and (f) carrying.  ECF No. 13-7 at 234.  Dr. Volkmann concluded that Mr.

18   Eldhardt is "severely limited" by his impairments, unable to perform even

19   sedentary work.  ECF Nos. 16 at 8; 13-7 at 234.

20   The ALJ accorded "significant weight" to Dr. Volkmann's 2007 opinions

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

that Mr. Eldhardt was capable of performing sedentary work, but the ALJ rejected Dr. Volkmann's January 2009 opinion that Mr. Eldhardt cannot perform even sedentary work. ECF No. 13-2 at 34. In the ALJ's first decision dated June 15, 2011 (ECF No. 13-3 at 6-17) the ALJ noted that "Dr. Volkmann's opinion is not consistent with his own treatment notes or the care he has given to the claimant" and that "[t]here is no evidence that the claimant is unable to ambulate due to his osteoarthritis or any other condition; even the claimant's own complaint s are not so exaggerated." ECF No. 13-3 at 15. The ALJ further noted that "[s]uch a catastrophic opinion is also not consistent with DDS and the claimant's primary care physician, Dr. Schmitt." The ALJ's second decision dated April 24, 2014 gave a more cursory explanation for according Dr. Volkmann's 2013 opinion less weight, stating that Dr. Volkmann gave "no explanation" for this change in his opinions, and that the January 2009 opinion is "not consistent with Dr. Volkmann's own treatment records . . . ." ECF No. 13-2 at 34.

In short, the ALJ discounted Dr. Volkmann's opinion due to contradicting evidence and a lack of substantiation. The lack of support is a sufficient basis for discounting the 2009 opinion, as the opinion was conclusory and not substantiated with objective clinical evidence. *Bray*, 554 F.3d at 1228 ("ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quotation, internal

brackets, and citation omitted); *Ghanim*, 763 F.3d at 1161 (factors for weighing contradicted treating physician's opinion include "'supportability' of the physician's opinion with medical evidence . . . ."). Moreover, although the ALJ could have been more detailed in explaining the exact inconsistencies, the contradiction is apparent. *Compare*, *e.g.*, ECF No. 13-7 at 248 ("He is walking without support . . . He is doing well. He can resume activity as tolerated."), *with* ECF No. 13-7 at 235 (claimant is unable to lift at least 2 pounds or unable to stand and/or walk).

Plaintiff argues that the ALJ's reasoning is unsupported by the record. ECF No. 16 at 8. Plaintiff argues that, unlike the evaluations in 2007, the 2009 evaluation takes into account Plaintiff's difficulty with his knees, which is notable given Plaintiff had surgery on both knees in between the two purportedly contradictory opinions. ECF No. 16 at 9. Plaintiff further points to medical evidence indicating Mr. Eldhardt's condition changed. ECF No. 16 at 10 ("Dr. Volkmann observed patellofemoral crepitus and sensitivity across the medial parapatellar region. An MRI revealed degenerative changes and chondromalacia.") (citing ECF No. 13-7 at 28, 238). Dr. Volkmann's treatment notes further reference shoulder pain. ECF No. 13-7 at 242. However, these proposed explanations for the change in opinion do not eviscerate the concern that the opinion lacks objective substantiation and is contradicted by Dr. Volkmann's

own notes and other opinions.

The ALJ did not err in rejecting Dr. Volkmann's opinion.

### 2.  Dr. Schmitt

Dr. Schmitt has treated Mr. Eldhardt since 1976, and has seen him numerous times over the last decade.  ECF Nos. 13-2 at 31-33; 13-6 at 11.  Dr. Schmitt saw Mr. Eldhardt for an array of problems from 2008 to 2013, and over that time Dr. Schmitt's opinion of Mr. Eldhardt's ability to work changed significantly.  For example, Dr. Schmitt opined that Mr. Eldhardt was limited to "light" work on February 8, 2010, ECF No. 13-8 at 133; limited to "sedentary" work on May 20, 2010; limited to lifting twenty pounds at maximum and ten pounds frequently on January 20, 2012, ECF No. 13-8 at 156, which is equivalent to the "light" work category, ECF No. 13-8 at 75; and then not able to work on February 22, 2013.  ECF No. 13-8 at 178.  The opinion dated February 22, 2013 stated that the limitations had existed since at least January 2008.  ECF No. 13-8 at 178.

The ALJ accorded the opinions of Dr. Schmitt "limited weight", complaining of internal inconsistencies and insufficient objective findings:

> Dr. Schmitt has provided several statements regarding the claimant's ability to work; some of his opinions indicate that the claimant is capable of work at the light exertional level and some indicate the ability to work at the sedentary exertional level.  Further, Dr. Schmitt has also variously opined that the claimant would miss 1 to 4 days of work per month or opined that he was unable to speculate on the claimant's number of absences.  The claimant's treatment records indicate that he is mild to moderate osteoarthritis with minimal objective findings.  He has some tenderness and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    some pain with motion but most of Dr. Schmitt objective findings in the
2    treatment record are not consistent with an inability to work and are not
     consistent with missing more than one day per month due to his
3    impairments.

4    ECF No. 13-2 at 33.

5         Plaintiff proffers a satisfactory explanation for the apparent inconsistencies

6    with respect to the number of days Dr. Schmitt opined claimant may not be able to

7    work, noting that the allegedly contradictory opinions come from different forms—

8    only one of which provides a space for the number of days Mr. Eldhardt may miss

9    work.  ECF No. 16 at 12, fn. 11; *compare* ECF No. 13-8 at 109-112 (no specific

10   question for days missed; dated May 20, 2010), ECF No. 13-8 at 165-166 (same;

11   dated August 16, 2010), *and* ECF No. 13-8 at 156-157 (same; dated March 12,

12   2012), *with* ECF No. 13-8 at 154-155 (4 or more days per month; dated March 19,

13   2011), ECF No. 13-8 at 161-162 ("probably 1-4 days / mo"; dated December 4,

14   2012), *and* ECF No. 13-8 at 176-177 (4 or more days per month; dated February

15   22, 2013).

16        Notably, while according the opinion limited weight, the ALJ's

17   determination was mostly consistent with Dr. Schmitt's opinions, except for two

18   opinions in 2013, which stated Mr. Eldhardt was fully disabled.  ECF No. 13-8 at

19   178.  The opinion dated July 22, 2013 states that the opinion was not based on a

20   contemporaneous visit, but was actually based on a previous visit dating back to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    December 2012.  ECF No. 13-9 at 67.  This opinion concludes Mr. Eldhardt is

2    disabled by his arthritis, but gives no analysis, so only the opinion dated February

3    22, 2013, will be discussed further.

4          The February 22, 2013 opinion is contradicted by Dr. Schmitt's own

5    records.  Importantly, the opinion incorrectly states that the limitations had existed

6    since at least January 2008.  This is plainly contradicted because Dr. Schmitt's

7    opinion changed over the years from 2008 to 2013.  Consequently, the opinion is

8    not entitled to controlling weight.

9          A review of the relevant factors for determining weight supports the ALJ's

10   decision to accord this opinion less weight.  First, substantial evidence in the

11   record indicates that the claimant has some ability to work consistent with the

12   ALJ's determination that Mr. Eldhardt is not disabled.  *See Ghanim,* 763 F.3d at

13   1161 (factors for weighing contradicted treating physician's opinion include "the

14   consistency of the physician's opinion with the record as a whole.").  For example,

15   medical records from Rockwood Clinic dated March 19, 2013 indicates that Mr.

16   Eldhardt complained of right knee pain described as "pressure ache and moderate",

17   and complained of swelling and knee instability.  ECF No. 13-9 at 31.  However,

18   Mr. Eldhardt had no difficulty kneeling, no pain at night, and could walk 15-30

19   minutes without knee pain.  ECF No. 13-9 at 31.

20         Second, the opinion is not supported by objective evidence.  *Bray*, 554 F.3d

at 1228 ("ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quotation, internal brackets, and citation omitted); *Ghanim*, 763 F.3d at 1161 (factors for weighing contradicted treating physician's opinion include "'supportability' of the physician's opinion with medical evidence . . . ."). In deciding, the ALJ adequately discussed the claimant's treatment records in the determination of non-disability and found that "most of Dr. [Schmitt's] objective findings in the treatment record are not consistent with an inability to work and are not consistent with missing more than one day per month due to his impairments." ECF No. 13-2 at 33.  The ALJ specifically took into account claimant's osteoarthritis and "tenderness and some pain with motion", but there was no objective evidence for the rheumatoid arthritis and evidence in the record suggested a less severe limitation on Mr. Eldhardt's ability to work.  ECF No. 13-2 at 33.

The ALJ did not err in according Dr. Schmitt's opinion limited weight.

## B.  Discrediting Mr. Eldhardt's symptom testimony

"An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment."  *Orn*, 495 F.3d at 635 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  Indeed, statements about pain do not, alone, establish disability.  20 C.F.R. § 416.929(a).  Where a medial impairment has been

1    established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"

2    *Orn*, 495 F.3d at 635 (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595,

3    599 (9th Cir. 1999) (quoting *Lester,* 81 F.3d at 834)).  The ALJ must give "clear

4    and convincing" reasons for rejecting the claimant's testimony where there is no

5    "affirmative evidence" the claimant was a malingerer.  *Id.* (citation omitted)

6        The ALJ reviewed the record as a whole and found "that the degree of

7    limitation the claimant alleges, and his allegation he is unable to perform work, is

8    not consistent with the overall objective evidence of record."  ECF No. 13-2 at 34.

9    Plaintiff complains that the "ALJ failed to provide specific, clear, and convincing

10   reasons for discrediting Mr. Eldhardt's symptom testimony."  ECF No. 16 at 14.

11   This is not the case.  As the record demonstrates, the ALJ put significant effort

12   detailing what limitations the medical evidence actually supported in comparison

13   to the complaints of Mr. Eldhardt.  *See* ECF Nos. 13-3 at 13-15; 13-2 at 27-34.

14       In making the determination, the ALJ clearly showed there was a lack of

15   medical evidence substantiating—and positive evidence contradicting—Mr.

16   Eldhardt's testimony with respect to Mr. Eldhardt's limitations.  *See* ECF Nos. 13-

17   2 at 27-34; 13-3 at 14-15; *see also*, *e.g.*, ECF No. 13-2 at 28 (ALJ specifically

18   noting that the results of laboratory testing did not indicate claimant had

19   rheumatoid arthritis); ECF No. 13-3 at 14 (subsequent imaging to support

20   diagnosis of thoracic outlet syndrome was normal; the MRI was unremarkable and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1   no further treatment for the claimant's thoracic outlet syndrome was sought or

2   received; imaging studies were negative); ECF No. 13-2 at 30 ("on admission the

3   claimant reported feeling relatively well with the exception of some hip and lower

4   extremity joint problems, saying that his angina symptoms have resolved . . . .").

5       The credibility assessment provides clear and convincing reasons for

6   discrediting Mr. Eldhardt's testimony beyond the RFC ascribed by the ALJ, and

7   the conclusion is supported by substantial evidence.   *Garrison,* 759 F.3d at 1012

8   ("An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a

9   detailed and thorough summary of the facts and conflicting clinical evidence,

10  stating his interpretation thereof, and making findings.'") (quoting *Reddick v.*

11  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

12      **C.  RFC Assessment**

13      Plaintiff complains that the ALJ erred when it found that "Mr. Eldhardt has

14  no right arm or hand limitations, and that he has only reaching limitations—no

15  handling or fingering limitations—with his left arm."  ECF No. 16 at 19.

16  Defendant argues that the record evidence does not support any handling or

17  fingering limitations, noting that an ALJ need not accept subjective complaints

18  without objective support and need not incorporate evidence form the opinion of a

19  treating physician he discounted.  ECF No. 21 at 13 (citing *Vertigan v. Halter*, 260

20  F.3d 1044, 1049 (9th Cir. 2001), and *Batson v. Comm'r of Soc. Sec.*, 359 F.3d

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1190, 1197 (9th Cir. 2004)).  Defendant is correct.

Where substantial evidence supports the ALJ's conclusion, the determination will not be disturbed, even if there is an alternative interpretation the ALJ could have adopted.  *Orn*, 495 F.3d at 630.  Here, the ALJ specifically addressed Mr. Eldhardt's complaint that his arms fell asleep, ECF No. 13-3 at 14, and took into account the alleged "limit [on Mr. Eldhardt's] ability to lift and reach with the left upper extremity",  ECF No. 13-3 at 15; but the ALJ found that "objective evidence has been sparse to substantiate any significant symptoms." Moreover, Dr. Schmitt opined that Mr. Eldhardt did not have handling problems in 2008 and in 2010, ECF Nos. 13-7 at 5; 13-8 at 75 and Mr. Eldhardt's father indicated that the claimant has not changed in his activities since the onset date, ECF No. 13-6 at 154.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**.

Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and close the file.

**DATED** February 17, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21